# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-12-2079-TUC-FRZ-DTF |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Alfredo Cesar-Ramirez, | |
| Defendant. | |

Pending before the Court is Defendant's Motion to Suppress Statements. (Doc. 28.) The Government responded in opposition. (Doc. 37.) This matter came before the Court for a hearing and a report and recommendation as a result of a referral, pursuant to LRCrim 5.1. Defendant's motion was set for evidentiary hearing on April 18, 2013. (Docs. 86, 87.) Defendant was present and represented by counsel. This matter was submitted following oral argument at the conclusion of the hearing and taken under advisement.

Defendant moves to suppress statements made to law enforcement agents. Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's Motion to Suppress Statements.

## I.
## FACTUAL FINDINGS

On September 11, 2012, Border Patrol Agent Timothy Westlake spotted a group of suspected illegal aliens in Chino Canyon, west of Nogales, Arizona, near the international

1  border. Agents Jesus Diaz, III, and Christian Ciarrochi walked into Chino Canyon north of
2  where the suspected aliens were seen. Agent Logan Tyner entered Chino Canyon south of
3  the suspected aliens' location. Agent Diaz spotted four suspects and ordered them to stop.
4  Two of the individuals complied with his order. The other two, including Defendant, fled
5  south. Agent Diaz followed the suspects who fled while Agent Ciarrochi remained with the
6  two other individuals. During the foot pursuit, Agent Diaz radioed to Agent Tyner alerting
7  him that the individuals may be coming in his direction.

8  Agent Tyner spotted two individuals running south and ordered them to stop. Both
9  complied with Agent Tyner's order. At about the same time, Agent Diaz arrived. Agents
10 Diaz and Tyner both testified they never brandished their service firearms. The agents
11 escorted Defendant and his companion back to the location where all four had first been
12 encountered, about 200 yards away, where Agent Ciarrochi was waiting. According to Agent
13 Diaz, he asked all four of the individuals two questions only, whether they were citizens and
14 whether they had documents permitting them to be in the United States. They all responded
15 "no" to these questions. Agent Tyner did not recall any questioning at this location.

16 All four of the suspected illegal aliens were led to a nearby construction site, which
17 could be accessed by patrol vehicles. Agent Diaz retrieved a Border Patrol Field Processing
18 Form I-213/826 from his patrol vehicle and asked Defendant his name, date of birth, place
19 of birth, and parents' names. After completing the top background portion of the form, the
20 agent advised Defendant that he was under arrest because he was believed to be illegally in
21 the United States. (*See* Gov't Exs. 15, 16.) Agent Diaz testified that during his questioning
22 of Defendant he did not raise his voice or make any threats. According to Agent Diaz, no
23 more than 25 minutes elapsed from the first encounter with Defendant until the form I-
24 213/826 was completed and questioning ended. Thereafter, Agent Tyner drove Defendant
25 to another location where a transport vehicle picked him up for transfer to a Border Patrol
26 Station for processing. Agent Tyner recalled that Agent Diaz's questioning of Defendant
27 began at the construction site and the Field I-213 was completed at the subsequent location
28

awaiting transport to the station; otherwise his recollection was consistent with Agent Diaz.

On April 11, 2013, Paulo Guillen-Molina, one of the aliens stopped with Defendant, testified at a videotaped deposition. Guillen-Molina's testimony was consistent with the testimony of Agents Diaz and Tyner. Guillen-Molina corroborated that no firearms were displayed, they were not mistreated, and the duration of the event was very short. Guillen-Molina recalled that Defendant was brought back within three to five minutes and it was only about 15 minutes before they were interviewed.

## II.

## DISCUSSION

At the evidentiary hearing, the Government clarified that it was seeking to introduce the following statements by Defendant: his responses to Agent Diaz's two initial questions regarding citizenship and documentation to be in the United States; and his name, date of birth, place of birth and parents' names, which Agent Diaz asked for purposes of the field I-213. Defendant seeks to suppress these statements,[1] arguing that he was in custody at the time of these statements and they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

In *Miranda*, 384 U.S. at 444-45, the Supreme Court held that in-custody interrogations must be preceded by an advisement and voluntary waiver of the suspect's rights. *Miranda* rights are required when (1) the suspect is in custody; and (2) the suspect is interrogated by law enforcement. *See United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009).

The Government asserts Defendant was merely detained and not in custody when he made the statements at issue. If an officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,'" he may make an investigatory stop and detention of a person. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v.*

---

[1] At the hearing, defense counsel did not contest admission of Defendant's name, date of birth or his parents' names; however, the Court does not distinguish between these statements because the analysis is the same.

- 3 -

*Ohio*, 392 U.S. 1, 30 (1968)). When an encounter is a *Terry* stop rather than an arrest, *Miranda* warnings are not necessarily required. *See United States v. Basher*, 629 F.3d 1161, 1166-67 (9th Cir. 2011). Further, a "brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a *Terry* stop and does not necessarily convert the stop into an arrest." *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982).

In *United States v. Cervantes-Flores*, 421 F.3d 825 (9th Cir. 2005), the defendant fled upon seeing a border patrol agent. The agent gave chase for about 3/4 of a mile and apprehended the defendant. The agent handcuffed the defendant and asked him his citizenship, whether he had any documents to be in the United States, and how he had crossed the border. The defendant admitted he was a Mexican citizen and had entered illegally. *Id.* at 828.

The *Cervantes-Flores* court found the agent had reasonable suspicion to stop the defendant because he was walking in an area known to be a smuggling route approximately 40 miles north of the border and the defendant attempted to flee. *Id.* at 830. Given the agent's reasonable suspicion to make a *Terry* stop, the Court held the agent could ask the defendant questions about his place of birth, immigration status, whether he had permission to be in the United States and whether he had crossed the border illegally. *Id.* These questions were "reasonably related in scope to the justification for their initiation." *Id.* (quoting *Terry*, 392 U.S. at 29).

In this case, Defendant was seen in a remote area, a short distance from the international border, walking into Chino Canyon, a common route used by illegal aliens to enter the United States. Defendant fled after he was confronted by border patrol agents who identified themselves and ordered Defendant to stop. Defendant was apprehended after a brief pursuit. These facts demonstrate the border patrol agents had reasonable suspicion to stop Defendant to investigate their suspicions that he was here illegally. Defendant does not contest the existence of reasonable suspicion.

Agent Diaz's questions to Defendant – concerning his background, citizenship and

- 4 -

whether he had any immigration documents – were limited in scope to determining whether he had illegally crossed the border. Defendant initially admitted his Mexican citizenship and that he lacked immigration documents. Defendant was then taken a short distance to where Agent Diaz could retrieve a Field Form I-213/826 from his vehicle. The agent asked Defendant his name, place of birth, date of birth, and his parents' names. The entire event lasted no more than 25 minutes. No weapons were brandished and there was no physical force or threatening language used. In this case, as in *Cervantes-Flores*, all of the questions concerned the defendant's citizenship and immigration status. Accordingly, Defendant's responses to these questions were within the scope of the *Terry* inquiry.

## III.

## CONCLUSION & RECOMMENDATION

The Court concludes Defendant was not in custody at the time of the questioning. Therefore, *Miranda* did not apply and none of Defendant's statements that the Government seeks to introduce should be suppressed.

It is recommended that, after its independent review of the record, the District Court deny Defendant's Motion to Suppress Statements. (Doc. 28.) Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **CR-12-2079-TUC-FRZ**.

DATED this 23rd day of April, 2013.

D. Thomas Ferraro
United States Magistrate Judge

- 5 -